# UNITED STATES DISTRICT COURT
# EASTERN DISTRICT OF MICHIGAN
# SOUTHERN DIVISION

Julius R. Davis,

                    Petitioner,        Case No. 12-cv-13520
                                       Hon. Judith E. Levy

v.

Thomas Birkett,

                    Respondent.

_____/

## OPINION AND ORDER DENYING PETITION FOR WRIT OF HABEAS CORPUS [1; 2], DENYING CERTIFICATE OF APPEALABILITY, DENYING LEAVE TO PROCEED *IN FORMA PAUPERIS*, AND DENYING AS MOOT PETITIONER'S MOTION FOR PARTIAL SUMMARY JUDGMENT [17]

Petitioner Julius R. Davis filed a *pro se* petition for a writ of habeas corpus on August 8, 2012, pursuant to 28 U.S.C. § 2254. Petitioner is currently incarcerated at the Muskegon Correctional Facility in Muskegon, Michigan, and challenges his convictions of unlawful imprisonment, unlawful use of a motor vehicle, and domestic assault. Petitioner raises five claims for habeas relief. For the reasons set forth below, the Court denies the petition.

## I.   Background

Petitioner's convictions arise generally from the assault of Teresha Coleman on the night of February 19, 2007.   According to Coleman, the night began at her apartment in Stevensville, Michigan, where she lived with her nine-year-old son.   (*See* Dkt. 11-5 at 149-50, 154.)   Coleman testified that she began dating Petitioner in October 2005.   (*Id.* at 153.) According to Coleman, on February 19, 2007, Petitioner contacted her to ask whether the two could meet.   (*Id.* at 157.)   Coleman agreed, picked Petitioner up "around ten or eleven o'clock at night," and brought him to her apartment.   (*Id.* at 158-59.)   Coleman testified that later in the evening, she sensed that "something wasn't right," and Petitioner accused her of seeing someone else.   (*Id.* at 159-60.)   Coleman testified that she tried to placate Petitioner because he had hit her twice previously.[1]   (*Id.* at 161.)

Coleman testified that Petitioner grabbed her ponytail and told her they were going for a ride.   (*Id.* at 174.)   According to Coleman, she did

---

[1] The trial court judge allowed Coleman to testify that Petitioner had hit her on two previous occasions.   Coleman testified that Petitioner struck her on August 4, 2006, two days before her mother's funeral, because someone had "brushed up against [her] twice and . . . [she] didn't do anything."   (*See* Dkt. 162-67.)   Coleman then testified that in January 2007, Petitioner punched her in the mouth because another man called her on the telephone late in the evening.   (*Id.* at 168-70.)

not want to leave, but feared that if she stayed, Petitioner would strike her and wake her sleeping son. (*Id.* at 175-76.) As Petitioner walked Coleman to her car, he allegedly alternated telling her that "'I'm not about to do anything to you,' and . . . 'I'ma [sic] beat yo [sic] fucking ass.'" (*Id.* at 177.) Coleman testified that Petitioner drove her to a dirt road and grabbed her hair, hit her in the eye, and slapped her multiple times. (*Id.* at 187-90.) Coleman testified that she fought back, attempted to run away but was caught, and that Petitioner told her that "they were gonna [sic] have to find [her]." (*Id.* at 190-93.) Petitioner then allegedly drove Coleman to a park as he continued to physically assault her. (*Id.* at 194.) She testified that Petitioner later told her "that [she] was making too much noise; and that he was going to make [her] buy a hotel room; and he told [her] he was going to torture [her] all night; and he was gonna [sic] kill [her] if [she] made a sound." (*Id.* at 200.) Petitioner allegedly took Coleman's ATM card, drove to a bank, withdrew twenty dollars, and then drove to a gas station. (*Id.* at 202-03.) Coleman testified that when they arrived at the gas station, she went in and told the attendant she "needed some help" and was "going to lock [her]self in

the bathroom." (*Id.* at 205-06.)   After locking herself in the restroom, Coleman allegedly called her father and the police from a phone that the gas station attendant had given her to use.   (*Id.* at 206-210.)

The gas station attendant testified at trial, corroborating Coleman's account of what happened at the gas station, including that on the night of the incident, Coleman asked for help, locked herself in the bathroom, and that he "gave her the phone and she started making a series of phone calls."   (*See* Dkt. 11-6 at 65-72.)   Coleman's father also testified at trial, including that Coleman called him at approximately 1:30 AM "distraught, crying," and that he picked her up from the gas station approximately twenty-five to thirty minutes later.   (*Id.* at 89-90.)

Petitioner's wife, Charmaine Lipkins-Davis, testified that approximately one week before the night of the incident, Petitioner told her that his relationship with Coleman was over.   (*Id.* at 155.)

## I.   **Procedural History**

Petitioner was tried by a jury in Berrien County Trial Court.   The jury found him guilty of unlawful imprisonment, Mich. Comp. Laws

4

§ 750.349b, unlawful use of a motor vehicle, Mich. Comp. Laws § 750.414, and domestic assault, Mich. Comp. Laws § 750.81(2). (*See* Dkt. 11-7 at 82-85.)   On June 25, 2007, Petitioner was sentenced to 93 days for the domestic assault, with credit for 93 days already served, 121 days for the unlawful use of a motor vehicle, with credit for 121 days already served, and 10 to 22.5 years for the unlawful imprisonment, with credit for 121 days already served.   (Dkt. 11-8 at 13-15.)

Petitioner appealed his convictions and sentences to the Michigan Court of Appeals, arguing that (i) the trial court abused its discretion when it permitted without cause and without Petitioner's consent the substitution of trial counsel, (ii) the trial court erred when it admitted evidence of his two prior assaults of the victim and, relatedly, when it failed to instruct the jury that it could only consider the evidence of the two prior assaults for a limited purpose, (iii) there was insufficient evidence to prove that he knowingly restrained the victim as required to convict him of unlawful imprisonment, (iv) the trial court erred in scoring offense variables 4 and 10 at 10 points each, (v) his sentence was based on inaccurate information because the trial court failed to assess

5

his rehabilitative potential through intensive alcohol, drug, and psychiatric treatment, and (vi) his sentence constitutes cruel and unusual punishment. *See Michigan v. Davis*, No. 280547, 2009 Mich. App. LEXIS 908, at *1-16 (Mich. Ct. App. Apr. 14, 2009).

The Michigan Court of Appeals affirmed Petitioner's convictions and sentences, reasoning that (i) "the record does not establish that a substitution of counsel ever occurred," (ii) "the trial court properly exercised its discretion in deciding that the highly probative value of the evidence of the prior assaults was not substantially outweighed by unfair prejudice," and, relatedly, "defendant deemed the [jury] instruction [regarding use of prior acts evidence] proper, [thus] he cannot argue on appeal that the trial court erred in giving the instruction," (iii) "in the light most favorable to the prosecution," the evidence "was sufficient to prove that the victim was secretly confined," as required by Mich. Comp. Laws § 750.349b, (iv) the "evidence is sufficient to support the trial court's scoring of [offense variable] 4" at ten points, which requires "[s]erious psychological injury requiring professional treatment occurred to a victim," and offense variable 10 at ten points, which requires "[t]he

offender exploited . . . a domestic relationship," (v) "the trial court did not rely on inaccurate information, nor was there an error in the scoring of the guidelines," and (vi) Petitioner "failed to present evidence to overcome the presumption of proportionality regarding his minimum sentence, nor has he presented any argument to convince [the court] that his maximum sentence may not be proportional."   *Id.*

The Michigan Supreme Court denied Petitioner leave to appeal the ruling of the Michigan Court of Appeals.   *People v. Davis*, 773 N.W.2d 685 (Mich. 2009).   Thereafter, Petitioner filed a motion for relief from judgment in the trial court, arguing that the case needed to be remanded for an evidentiary hearing on the issue of substitution of appointed counsel, Petitioner was denied effective assistance of trial counsel, Petitioner's conviction for unlawful imprisonment was against the great weight of the evidence, the cumulative effect of the errors denied Petitioner a fair trial in violation of due process, and Petitioner was denied effective assistance of appellate counsel.   (*See* Dkt. 11-13.)   The trial court denied the motion.   *People v. Davis*, No. 2007-400889-FC (Berrien Cty. Trial Ct. Oct. 29, 2010); (*see* Dkt. 11-15).   The Michigan

7

Court of Appeals and the Michigan Supreme Court both denied Petitioner leave to appeal the denial of his motion for relief from judgment. *People v. Davis*, No. 305909 (Mich. Ct. App. Nov. 22, 2011); *People v. Davis*, 815 N.W.2d 489 (Mich. 2012); (*see* Dkt. 11-11; Dkt. 11-12).

Petitioner then filed this habeas petition *pro se*, arguing that: (a) an evidentiary hearing is required on the issue of substitution of appointed counsel at his trial to establish his claim that a substitution did occur without cause or without his consent in violation of his right to counsel and a fair trial; (b) he was denied his constitutional right to effective assistance of counsel at trial, therefore he is entitled to a hearing pursuant to *People v. Ginther*, 390 Mich. 436 (1973) or a new trial; (c) his conviction for unlawful imprisonment should be vacated, because the guilty verdict was against the great weight of the evidence; (d) the cumulative effect of errors at trial denied him a fair trial, violating due process of law and requiring reversal; and (e) he has established an entitlement to relief from judgment of his conviction and sentence by demonstrating good cause for the failure to raise his present claims on

8

direct appeal or in a prior motion and actual prejudice from the alleged irregularities in this criminal process.

## II.   Standard

Petitioner's claims are reviewed against the standards established by the Antiterrorism and Effective Death Penalty Act of 1996, Pub. L. No. 104-132, 110 Stat. 1214 ("AEDPA").   AEDPA provides:

> An application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court shall not be granted with respect to any claim that was adjudicated on the merits in State court proceedings unless the adjudication of the claim –
>
> (1)   resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or
>
> (2)   resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceedings.

28 U.S.C. § 2254(d).

"A state court's decision is 'contrary to' . . . clearly established law if it 'applies a rule that contradicts the governing law set forth in [United States Supreme Court] cases' or if it 'confronts a set of facts that are materially indistinguishable from a decision of [the Supreme] Court and

nevertheless arrives at a result different from [Supreme Court] precedent.'" *Mitchell v. Esparza*, 540 U.S. 12, 15-16 (2003) (per curium) (quoting *Williams v. Taylor*, 529 U.S. 362, 405-06 (2000)). "[T]he 'unreasonable application' prong of § 2254(d)(1) permits a federal habeas court to 'grant the writ if the state court identifies the correct governing legal principle from [the Supreme] Court's decisions but unreasonably applies that principle to the facts' of petitioner's case." *Wiggins v. Smith*, 539 U.S. 510, 520 (2003) (quoting *Williams*, 529 U.S. at 413). However, "[i]n order for a federal court to find a state court's application of [Supreme Court] precedent 'unreasonable,' the state court's decision must have been more than incorrect or erroneous. . . . The state court's application must have been 'objectively unreasonable.'" *Id.* at 520-21 (quoting *Lockyer v. Andrade*, 538 U.S. 63, 75 (2003)) (citing *Williams*, 529 U.S. at 409). "A state court's determination that a claim lacks merit precludes federal habeas relief so long as 'fair minded jurists could disagree' on the correctness of that decision." *Harrington v. Richter*, 562 U.S. 86, 88 (2011) (quoting *Yarborough v. Alvarado*, 541 U.S. 652, 664 (2004)).

> Section 2254(d) reflects the view that habeas corpus is a guard against extreme malfunctions in the state criminal justice systems, not a substitute for ordinary error correction through appeal. . . .  As a condition for obtaining habeas corpus from a federal court, a state prisoner must show that the state court's ruling on the claim being presented in federal court was so lacking in justification that there was an error well understood and comprehended in existing law beyond any possibility for fairminded disagreement.

*Id.* at 102-03 (internal quotation and citation omitted).

Section 2254(d)(1) thus limits a federal habeas court's review to a determination of whether the state court's decision conflicts with clearly established federal law as determined by the Supreme Court at the time the state court renders its decision.  *See Williams,* 529 U.S. at 412. However, this "does not require citation of [Supreme Court] cases – indeed, it does not even require *awareness* of [Supreme Court] cases, so long as neither the reasoning nor the result of the state-court decision contradicts them."  *Early v. Packer*, 537 U.S. 3, 8 (2002).  Relatedly, "while the principles of 'clearly established law' are to be determined solely by resort to Supreme Court rulings, the decisions of lower federal courts may be instructive in assessing the reasonableness of a state court's resolution of an issue."  *Stewart v. Erwin*, 503 F.3d 488, 493 (6th

11

Cir. 2007) (citing *Williams v. Bowersox*, 340 F.3d 667, 671 (8th Cir. 2003); *Dickens v. Jones*, 203 F. Supp. 2d 354, 359 (E.D. Mich. 2002).

Finally, a federal habeas court must presume the correctness of state court factual determinations, see 28 U.S.C. § 2254(e)(1), and a petitioner may rebut this presumption only by presenting clear and convincing evidence. *Warren v. Smith*, 161 F.3d 358, 360-61 (6th Cir. 1998). Put differently, only factual determinations that are "objectively unreasonable in light of the evidence presented in the state-court proceeding" will be overturned. *McKinney v. Ludwick*, 649 F.3d 484, 488 (6th Cir. 2011) (quoting *Miller-El v. Cockrell*, 537 U.S. 322, 340 (2003)).

## III. Analysis

### (a) *Petitioner's substitution of counsel claim*

Petitioner argues that his Sixth Amendment right to counsel was violated when the trial court allowed the substitution of attorney Gary Campbell for Richard Sammis without Petitioner's consent. (Dkt. 1 at 15, 17.)

The Michigan Court of Appeals found that "the record does not establish that a substitution of counsel ever occurred." *Michigan v.*

12

*Davis*, No. 280547, 2009 Mich. App. LEXIS 908, at *1-2 (Mich. Ct. App. Apr. 14, 2009). The court reasoned that the trial court appointed "Felony Defense Counsel" to represent defendant, and thus under Michigan Court Rules, "any attorney who was a member of Felony Defense Counsel could appear to represent defendant." *Id.* at *2-3. Specifically, the court found that the "facts suggest that the second attorney to appear to represent defendant, Gary Campbell, was . . . a member of Felony Defense Counsel," because he "had the same address as Sammis, at least until the time of sentencing, and worked with Sammis on defendant's case." *Id.* at *3. The court further noted that there "was no withdrawal or substitution of Felony Defense Counsel after the initial appointment, and neither defendant nor the trial court questioned the appearances of either Sammis or Campbell at any time before this appeal." *Id.*

Petitioner agrees that Felony Defense Counsel was appointed to represent him, but argues that "there is nothing on the record to even remotely show the second attorney, Gary Campbell, was a member of the Berrien County Felony Defense Counsel or officially an associate in the

practice of law with Attorney Richard Sammis in 2007." (*See* Dkt. 1 at 19.)   The only evidence cited by Petitioner is an "Offer of Proof," signed by his former post-conviction counsel Rose Mary C. Robinson, in which Robinson suggests that during a phone conversation with attorney Campbell, attorney Campbell stated that "he was not a member of the Berrien County Felony Defense Counsel in 2007," "never received money . . . from Berrien County," "was not a partner or associate of Attorney Richard Sammis in the practice of law[, but] rented space in Attorney Sammis' office," and that he "did sub-contract work for Attorney Sammis for about a year."  (*Id.*; *see* Dkt. 2 at 20-21.)

The Court finds that Petitioner's only evidence—an offer of proof from his former post-conviction counsel—falls short of the clear and convincing evidence required to overturn the state court's factual finding.   Attorney Richard Sammis represented Petitioner at the preliminary examination.  (*See* Dkt. 11-1 at 1.)   And both attorney Sammis and attorney Gary Campbell were listed as defense attorneys from the first day of trial.  (Dkt. 11-5.)   After Petitioner responded yes to the trial judge's inquiry as to whether he was Julius Ricardo Davis,

14

the trial judge noted that he was "present in court . . . along with [his] attorney Mr. Gary Campbell, and also co-counsel Mr. Sammis."  (*Id.* at 3.)   And attorney Sammis made clear that he was merely there as attorney Campbell's "assistant," (see *id.* ("THE COURT: . . . .   You want co-counsel or assistant.   MR. SAMMIS: I would prefer assistant.")), indicating that attorney Campbell was lead defense counsel from the first day of trial.   The Court cannot overturn the state court's factual finding, because there is not clear and convincing evidence to show that the state court's factual finding was unreasonable.

### (b)   Petitioner's ineffective assistance of counsel claim

Petitioner argues generally that his trial attorney was unconstitutionally deficient by failing to adequately prepare for trial. (Dkt. 1 at 24-25.)   Specifically, Petitioner argues that his trial attorney: failed to interview and call the victim's son to testify as an eye witness on Petitioner's behalf, failed to obtain the victim's cell phone records, failed to obtain a medical expert to explain the victim's injuries, failed to impeach the victim with prior inconsistent statements, failed to insure fair conditions during trial, failed to prepared Petitioner to testify, failed

to object to improper impeachment of Petitioner, opened the door to prejudicial testimony, failed to object to the admission of an allegedly improper video reenactment of the route driven by Petitioner on the night of the incident, failed to object to the admission of the 9-1-1 tape, failed to object to rebuttal testimony, and failed to object to the scoring of 50 points for offense variable 7 at sentencing.   (*Id.* at 25.)   But because Petitioner only argues the merits of his ineffective assistance of counsel claim, rather than providing adequate reasons to excuse his procedural default, the Court cannot grant habeas relief on this claim.

Petitioner failed to bring an ineffective assistance of counsel claim on direct review.   Instead, Petitioner argued that he was prejudiced by his trial attorney's "lack of preparation" in support of his claim that there had been an unlawful substitution of trial counsel.   (*See* Dkt. 11-9 at 41.)   The Michigan Court of Appeals found that:

> First, the record establishes that Campbell did impeach the victim with prior inconsistent statements. Second, there is no indication on the record, and [Petitioner] has not established by an offer of proof, that any favorable expert testimony was available to him, that the victim's son could have provided any testimony beneficial to his behalf, or that evidence of other acts by the victim was admissible to establish a motive by the victim to fabricate her testimony.

16

*Michigan v. Davis*, No. 280547, 2009 Mich. App. LEXIS 908, at \*4-5 n.1 (Mich. Ct. App. Apr. 14, 2009). Petitioner brought an ineffective assistance of counsel claim for the first time in his motion for relief from judgment, which the trial court rejected as procedurally barred:

> [T]he Court of Appeals rejected [Petitioner]'s claim that he was prejudiced by trial counsel's alleged failure to prepare. . . .
>
> [Petitioner] further claims that trial counsel was deficient because he (1) failed to insure fair conditions during the trial, (2) failed to prepare [Petitioner]'s testimony, (3) failed to object to improper impeachment of [Petitioner], (4) opened the door to prejudicial testimony, (5) failed to object to the admission of a video reenactment, (6) failed to object to the admission of the 911 tape, (7) failed to object to rebuttal testimony, (8) ineffectively conducted cross examination, and (9) failed to object to the scoring of 50 for offense variable 7 at sentencing.
>
> * * *
>
> Though [Petitoner]'s current motion, through hindsight, has alleged all the things that trial counsel should have done, [Petitioner] has failed to show a reasonable probability that, in the absence of all of the alleged errors, the result of the trial would have been different. More importantly, [Petitioner] has failed to show good cause as to why these issues could not have been raised on appeal. . . . A court may not grant a motion for relief from judgment which alleges grounds for relief, other than defects in jurisdiction, which could have been raised on appeal. [Mich. Ct. R.] 6.508(D)(3).

17

*People v. Davis*, No. 2007-400889-FC, slip op. at 4-6 (Berrien Cty. Trial Ct. Oct. 29, 2010) (internal citations omitted); (*see* Dkt 11-15 at 4-6). The trial court decision is the last reasoned opinion on the matter.   *See Guilmette v. Howes*, 624 F.3d 286, 291 (6th Cir. 2010).

Under the doctrine of procedural default, "[f]ederal habeas courts reviewing the constitutionality of a state prisoner's conviction and sentence . . . . will not review the merits of claims, including constitutional claims, that a state court declined to hear because the prisoner failed to abide by a state procedural rule." *Martinez v. Ryan*, 132 S. Ct. 1309, 1316 (2012).   "A state court's invocation of a procedural rule to deny a prisoner's claims precludes federal review of the claims if, among other requisites, the state procedural rule is a nonfederal ground adequate to support the judgment and the rule is firmly established and consistently followed."   *Id.*

According to the state court, under Michigan Court Rule 6.508(D)(3), part of the Michigan Rules of Criminal Procedure, "[a] court may not grant a motion for relief from judgment which alleges grounds for relief, other than defects in jurisdiction, which could have been raised

on appeal." *See People v. Davis*, No. 2007-400889-FC, slip op. at 4-6 (Berrien Cty. Trial Ct. Oct. 29, 2010) (citing Mich. Ct. R. 6.508(D)(3)); (Dkt 11-15 at 4-6).   To excuse this procedural default under the state's criminal rule of procedure, Petitioner would have had to demonstrate "good cause for failure to raise such grounds on appeal or in the prior motion, and . . . actual prejudice from the alleged irregularities that support the claim for relief."   Mich. Ct. R. 6.508(D)(3)(a)-(b).   To establish actual prejudice in this case, Petitioner must demonstrate that "but for the alleged error, the defendant would have had a reasonably likely chance of acquittal."   *Id.* at (D)(3)(b)(i).   The state court held that Petitioner "failed to show a reasonable probability that, in the absence of all of the alleged errors, the result of his trial would have been different," and that he "failed to show good cause as to why these issues could not have been raised on appeal."   *People v. Davis*, No. 2007-400889-FC, slip op. at 4-6 (Berrien Cty. Trial Ct. Oct. 29, 2010); (*see* Dkt 11-15 at 4-5). There was no argument in the motion for relief from judgment as to why the procedural default should be excused.

19

When state courts "clearly and expressly rely on a valid state procedural bar, federal habeas review is also barred unless Petitioner can demonstrate 'cause' for the default and actual prejudice as a result of the alleged constitutional violation, or can demonstrate that failure to consider the claim will result in a 'fundamental miscarriage of justice.'" *Durr v. McLaren*, 2015 U.S. Dist. LEXIS 25790, at *11-12 (quoting *Coleman v. Thomason*, 501 U.S. 722, 750-51 (1991)). "Given the Supreme Court's express language, and the procedural default rule's roots in comity and federalism, a Petitioner must show that he was actually prejudiced regardless of the nature of the underlying constitutional claim." *Ambrose v. Booker*, 684 F.3d 638, 650-51 (6th Cir. 2012). But Petitioner gives no reason to excuse his procedural default, instead arguing the merits of his claim that counsel's performance was constitutionally deficient. The Court thus denies the petition as to this claim.

And although the Court need not reach a decision on the merits of Petitioner's arguments, the Court finds that Petitioner's claim would still fail under a merits analysis, because the factual findings of the

20

Michigan Court of Appeals and the Berrien County Trial Court were not unreasonable. Under AEDPA, Petitioner "must do more than show that he would have satisfied *Strickland*'s test if his claim were being analyzed in the first instance." *See Bell v. Cone*, 535 U.S. 685, 698-99 (2002). "The pivotal question is whether the state court's application of the *Strickland* standard was unreasonable." *Harrington v. Richter*, 562 U.S. 86, 101 (2011). The Michigan Court of Appeals and Berrien County Trial Court made findings that are supported by the record.

Regarding Petitioner's arguments that were also considered by the Michigan Court of Appeals, the record shows that Petitioner's trial counsel did in fact impeach the victim with prior inconsistent statements, (see, for example, Dkt. 11-6 at 23, 27-28, 29, 33-38, 47-49, 55-57, 60-61), and as noted by the court, the record lacks support for Petitioner's allegations that favorable expert testimony was available to him and that the victim's son could have provided exculpatory testimony. Absent any affidavit or other evidence establishing what a potential medical expert or other witness would specifically say, Petitioner cannot establish ineffective assistance of counsel on this

21

ground.  *See Tinsley v. Million*, 399 F.3d 796, 810 (6th Cir. 2005) ("[Petitioner] has not introduced affidavits or any other evidence establishing what [potential witnesses] would have said. . . .  In the absence of any evidence showing that they would have offered specific favorable testimony, [Petitioner] cannot show prejudice from counsel's strategy recommendation not to introduce this evidence."); *see also English v. Romanowski*, 602 F.3d 714, 728 (6th Cir. 2010) (the court's "concern is not to decide, using hindsight, what [it] think[s] would have been the best approach at trial.  Instead, [the court] consider[s] only if the approach ultimately taken was within 'the wide range of reasonable professional assistance' given the circumstances") (quoting *Strickland*, 466 U.S. at 689).  Finally, besides being internally contradictory, Petitioner's argument that trial counsel "objected to the [prior acts] evidence but was not vigilant during trial" because he failed to "object or challenge the admission of evidence" is belied by the fact that trial counsel filed a motion to disallow such evidence, and a full hearing was held on the issue.  (*See* Dkt. 11-4.)  Trial counsel is not ineffective merely on the basis that the trial court ruled against him.

Petitioner also argues that trail counsel failed to prepare Petitioner to give testimony, allowing Petitioner to paint an "unfavorable image of himself." (Dkt. 1 at 33.) But Petitioner does not claim that he testified against his own wishes. And Petitioner's argument, without citation to any record evidence, that the "only possible explanation" for Petitioner's prejudicial testimony was that counsel "failed to prepare [Petitioner] for examination, and decided that once the inadmissible information started unfolding before the jury, another two, three or more instances could not add much more to the already existent prejudice," (*id.* at 34), is not persuasive. Petitioner opened himself up to certain cross-examination when he voluntarily took the stand, and this "open[ed] the door to a plethora of highly prejudicial information . . . to come before the jury." (*Id.*) It was the prosecution's right, indeed duty, to elicit facts through cross-examination that *fairly* prejudiced the defense, and trial counsel was not ineffective for failing to prevent admissible evidence from being presented to the jury.

Relatedly, trial counsel was not ineffective for failing to object to the prosecution's use of Petitioner's prior conviction of "false verbal

23

information to the police," (see Dkt. 1 at 34), to impeach Petitioner. Petitioner argues that under Mich. R. Evid. 609, "the prosecutor should have simply asked [Petitioner] if he had been convicted of this crime," and there "could be no strategic reason for defense counsel not having objected, when counsel had everything to gain and nothing to lose by objection." (*Id.* at 35.) But the prosecution did elicit the information by asking Petitioner about the crime, as permitted by the rule. (*See id.* at 34);[2] *see also* Mich. R. Evid. 609(a)(2) ("For the purpose of attacking the credibility of a witness, evidence that the witness has been convicted

---

[2]   Q      [Y]ou gave the police a fake name, correct?
      A      Yes, I did.
      Q      You actually just didn't give them one fake name, you gave them two false names, 'cause, after they checked the first-- Correct, you gave them two false names?
      A      I can't say for sure. That night that that incident happened, it did happen. I'm not lying and said that it didn't. It did happen. I was at that place where they said. I was in the car. The police pulled up and they asked me…, and, yes.
      * * *
      Q      Okay. You lied to the police?
      A      Yes.
      Q      You actually pled guilty to giving false information to a police officer?
      A      Yes, I did.
      Q      Okay. And it's not a stretch that you can tell a lie to an authority figure, correct?
      A      No, it's not.
      Q      Okay. And it's not a stretch that you can tell a lie to have your cake and eat it too, correct?
      A      You right [sic].
(Dkt. 11-6 at 135-37.)

24

of a crime shall not be admitted unless the evidence has been elicited from the witness or established by public record during cross-examination, and . . . the crime contained an element of dishonesty or false statement."). As the record shows, no extrinsic evidence was submitted to the jury, only Petitioner's testimony regarding his prior conviction, elicited on cross-examination. (*See* Dkt. 11-6 at 135-37.) Trial counsel was not ineffective for declining to raise an objection to the arguably proper admission of evidence.

The Court is also not persuaded that trial counsel was ineffective by asking the victim's father during cross-examination whether he liked Petitioner. Petitioner "must overcome the presumption that, under the circumstances, the challenged action might be considered sound trial strategy." *Strickland*, 466 U.S. at 690 (quotation omitted). Because trial counsel's question was plausibly the result of sound trial strategy—to show the jury that the witness was biased against Petitioner—trial counsel was not ineffective for asking the question. *See generally Cullen v. Pinholster*, 563 U.S. 170, 131 S. Ct. 1388, 1407 (2011) (the Court is "required not simply to give [the] attorneys the

benefit of the doubt, but to affirmatively entertain the range of possible reasons [Petitioner]'s counsel may have had for proceeding as [he] did") (internal quotations and citations omitted).

Petitioner argues that trial counsel was constitutionally deficient for failing to object to "the assessing of 50-points under offense [v]ariable 7 where the objective evidence presented during trial did not warrant points under this offense variable." (Dkt. 1 at 41.) Under Michigan law, a score of 50 points under offense variable 7 is appropriate if "[a] victim was treated with sadism, torture, or excessive brutality or conduct designed to substantially increase the fear and anxiety a victim suffered during the offense." Mich. Comp. Laws § 777.37. According to Petitioner, even if the victim's testimony was believed, his "conduct did not rise to the extreme level of torture, sadism, or brutality that [offense variable] 7 was meant to punish." (Dkt. 1 at 42.) No state court has had the opportunity to address this issue, because this is the first time Petitioner makes the argument. In any case, the Michigan Court of Appeals noted that: "In imposing sentence, the trial court stated that 'significant punishment [was] appropriate' because of

defendant's actions.  He held the victim captive, where he 'beat' and 'terrorized' her, 'impos[ing] physical and mental scars that [were] gonna last a very long time.'"  *Michigan v. Davis*, No. 280547, 2009 Mich. App. LEXIS 908, at *15 (Mich. Ct. App. Apr. 14, 2009) (alterations in original).  Given the trial court's findings, trial counsel was not constitutionally deficient for declining to object to the scoring of offense variable 7.

Finally, Petitioner makes a number of other unpersuasive arguments, including that trial counsel was ineffective for failing to obtain the victim's cell phone records, failing to insure fair conditions during trial, failing to object to the rebuttal testimony offered regarding whether the victim smoked any marijuana on the night in question, failing to object to the video reenactment, and failing to object to the admission of the 9-1-1 call.  (*See generally* Dkt. 1.)  First, Petitioner does not specifically indicate what "discrepancies contained in documented cell phone records" would be exculpatory.  *See Tinsley*, 399 F.3d at 810 (noting that lack of "affidavits or any other evidence establishing what" the proposed evidence would contain that is

exculpatory "cannot show prejudice from counsel's strategy recommendation not to introduce this evidence"). Second, for the reasons set forth above, Petitioners argument that he "was denied a fair trial by the overwhelming inadmissible and prejudicial evidence" is not born out by the record, because the evidence at issue was arguably admissible under the relevant evidentiary rule and thus *fairly* (as opposed to unfairly) prejudicial. Third, Petitioner opened the door to the rebuttal testimony by testifying in the first instance that the victim "rolled a blunt and fired it up in her apartment." (*See* Dkt. 1 at 38.) Fourth, taking as true that the video may not have "fairly and accurately represent[ed] the event in question," may not have been "filmed under conditions substantially similar to those existing at the time of the event," and may not have been played in "real time," (*id.* at 36-37), Petitioner has not shown that this would have unfairly prejudiced the defense to the point that trial counsel was unconstitutionally deficient for declining to object to the video's use. Finally, Petitioner's argument that "there was no hearsay exception for the 911 tape"—and therefore trial counsel was unconstitutionally

deficient for failing to object to the tape's admission—is not persuasive, because the evidence could have arguably been admitted under an exception to the rule against hearsay (excited utterance).

Petitioner's claim that he was denied the right to effective assistance of trial counsel is also procedurally barred, because Petitioner failed to raise the claim on direct review and further failed to argue that the procedural default should be excused. Moreover, none of Petitioner's arguments regarding ineffective assistance of counsel would succeed on the merits. The Court thus denies the petition as to this claim.

### (c)   Petitioner's great weight of the evidence claim

In his third habeas claim, Petitioner argues that his "conviction for unlawful imprisonment should be vacated since the guilty verdict was against the great weight of evidence." (Dkt. 1 at 44.)[3]  The Michigan

---

[3] Petitioner's argument that the verdict was against the "great weight of evidence" is a state-law claim that is not reviewable by a federal court in a habeas proceeding. *See Nash v. Eberlin*, 258 F. App'x 761, 764 n.4 (6th Cir. 2007); *Cukaj v. Warren*, 305 F. Supp. 2d 789, 796 (E.D. Mich. 2004) ("A federal habeas court . . . has no power to grant habeas relief on a claim that a state conviction is against the great weight of the evidence."). But because Petitioner is *pro se*, the Court interprets the argument to be a "sufficiency of the evidence claim," which is a federal due process claim. *Nash*, 258 F. App'x at 764 n.4. Relatedly, a state court determination that "a conviction is supported by the weight evidence" is also generally "dispositive of the issue of sufficiency." *See, e.g.*, *id.* at 765.

Court of Appeals considered the sufficiency of the evidence claim on

direct review and ruled on the merits:

> Defendant claims that there was insufficient evidence to
> support his conviction for unlawful imprisonment.
> Specifically, defendant argues that the evidence was
> insufficient to prove that he knowingly restrained the victim
> under any of the three circumstances listed in [Mich. Comp.
> Laws §] 750.349b(1).   We disagree.

> When reviewing a challenge to the sufficiency of the evidence,
> we must view the evidence in a light most favorable to the
> prosecution and determine whether a reasonable trier of fact
> could find that all of the elements of the crime were proven
> beyond a reasonable doubt. *People v Cline*, 276 Mich App
> 634, 642; 741 NW2d 563 (2007). "[C]ircumstantial evidence
> and reasonable inferences arising from th[e] evidence can
> constitute satisfactory proof of the elements of a
> crime." *People v Lee*, 243 Mich App 163, 167-168; 622 NW2d
> 71 (2000).

> [Mich. Comp. Laws §] 750.349b(1) provides:

>> A person commits the crime of unlawful imprisonment
>> if he or she knowingly restrains another person under
>> any of the following circumstances:

>> (a) The person is restrained by means of a weapon or
>> dangerous instrument.

>> (b) The restrained person was secretly confined.

>> (c) The person was restrained to facilitate the
>> commission of another felony or to facilitate flight after
>> commission of another felony.

The phrase "secretly confine" means either "[t]o keep
the confinement of the restrained person a secret" or "[t]o
keep the location of the restrained person a secret." [Mich.
Comp. Laws §] 750.349b(3)(b). The "essence of 'secret
confinement' . . . is deprivation of the assistance of others by
virtue of the victim's inability to communicate his
predicament." *People v Jaffray*, 445 Mich 287, 309; 519
NW2d 108 (1994). Here, sometime around midnight,
defendant took the victim's cellular telephone. He then
forced the victim into her vehicle, and drove the victim
around, stopping at dark, isolated areas to assault her.
When the victim attempted to escape at the first stop,
defendant caught her and forced her to return to the vehicle
by grabbing her hair. At the gas station, defendant told the
victim that, if she stepped out of the vehicle, he would drive to
Stevensville, where the victim's son was sleeping. This
evidence, viewed in the light most favorable to the
prosecution, shows an intention by defendant to keep his
confinement of the victim a secret. The evidence was
sufficient to prove that the victim was secretly confined.

*Michigan v. Davis*, No. 280547, 2009 Mich. App. LEXIS 908, at *8-10
(Mich. Ct. App. Apr. 14, 2009) (footnote omitted). The trial court
declined to address this argument in considering Petitioner's motion for
relief from judgment:

[Petitioner] next argues that his guilty conviction of the
unlawful imprisonment charge went against the great weight
of the evidence. (Def Brief, p 32). [Petitioner], however,
brought this issue on appeal, and the court of appeals rejected
his argument. Because a court may not grant a motion for
relief from judgment which alleges grounds for relief which
were decided against [Petitioner] in a prior appeal under

31

[Michigan Court Rule] 6.508(D)(2), this Court cannot grant relief based on these grounds.

*People v. Davis*, No. 2007-400889-FC, slip op. at 6 (Berrien County Trial Ct. Oct. 29, 2010); (*see* Dkt 11-15 at 6).

As set forth above, AEDPA provides that the Court must presume that the state court factual findings are correct, unless Petitioner can show otherwise with substantial evidence, and the Court can only grant habeas relief if the state courts ruled contrary to, or unreasonably applied, clearly established federal law as set forth by the United States Supreme Court.   The relevant question here is whether, "after viewing the evidence in the light most favorable to the prosecution, *any* rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt."   *Jackson v. Virginia*, 443 U.S. 307, 319 (1979) (emphasis in original).

The Michigan Court of Appeals applied the correct standard.   *See Michigan v. Davis*, 2009 Mich. App. LEXIS 908, at *9 ("When reviewing a challenge to the sufficiency of the evidence, we must view the evidence in a light most favorable to the prosecution and determine whether a reasonable trier of fact could find that all of the elements of the crime

were proven beyond a reasonable doubt.").   And the court found that in the light most favorable to the prosecution, the finding that Petitioner intended to "secretly confine" the victim was supported by evidence that: Petitioner "took the victim's cellular telephone"; Petitioner "forced the victim in the into her vehicle, and drove the victim around, stopping at dark, isolated areas to assault her"; "when the victim attempted to escape at the first stop, [Petitioner] caught her and forced her to return to the vehicle by grabbing her hair"; and "[a]t the gas station, Petitioner told the victim that, if she stepped out of the vehicle, he would drive to Stevensville, where the victim's son was sleeping."   *Id.* at *10.

The Court finds that the Michigan Court of Appeals did not unreasonable apply federal law regarding sufficiency of the evidence, because rational jurors could conclude that this evidence showed, beyond a reasonable doubt, that Petitioner intended to secretly confine the victim.   The petition is thus denied as to this claim.

### (d)   *Petitioner's cumulative error claim*

Petitioner argues that "[i]f the combined weight of errors deprives the accused of a fair trial, this requires reversal even if individual errors

standing alone would not require reversal." (*See* Dkt. 2 at 4 (citing *Herbert v. Louisiana*, 272 U.S. 312, 316 (1926)).)   But "post-AEDPA, not even constitutional errors that would not individually support habeas relief can be cumulated to support habeas relief."   *Moore v. Parker*, 425 F.3d 250, 256 (6th Cir. 2005); *see also Williams v. Anderson*, 460 F.3d 789, 816 (6th Cir. 2006) ("[T]he law of this Circuit is that cumulative error claims are not cognizable on habeas because the Supreme Court has not spoken on this issue.").   In this case, the alleged combined errors would not require reversal even if that were the standard to be applied. The petition is thus denied as to this claim.

### (e)   *Petitioner's ineffective assistance of appellate counsel claim*

Petitioner argues that "former appellate counsel's brief omitted the significant and obvious issues and arguments made herein," and that it "is reasonably probable that [Petitioner] would have gotten a reversal on his appeal of right, but for the inaction of appellate counsel."   (Dkt. 2 at 6-7.)   Although Petitioner does not specify which errors appellate counsel failed to raise, the Court notes that the only argument made in

the petition that was not raised on direct appellate review is Petitioner's claim of ineffective assistance of trial counsel.

Petitioner's claim of ineffective assistance of appellate counsel—unlike the claim of ineffective assistance of trial counsel—was not procedurally defaulted, because Petitioner raised the argument in his motion for relief from judgment.   (*See* Dkt. 11-13 at 47.)   However, the trial court denied Petitioner relief on this claim on the merits:

> [Petitioner] has not shown that appellate counsel was ineffective.   In its present motion, [Petitioner] argues many of the same arguments appellate counsel made on appeal. [Petitioner] also brings forth many new claims asserting that trial counsel was ineffective.   Although [Petitioner] has thought of more issues to argue in [his] current motion, appellate counsel need not raise every arguable issue to provide effective assistance of counsel.   More importantly, [Petitioner] has not show[n] how the results of his appeal would have been different if appellate counsel had brought all of the issues [Petitioner] brings forth in [his] current motion.

*People v. Davis*, No. 2007-400889-FC, slip op. at 8 (Berrien Cty. Trial Ct. Oct. 29, 2010); (*see* Dkt. 11-15 at 8).

Contrary to Petitioner's cursory statement that he "would have gotten a reversal on his appeal of right," Petitioner's ineffective assistance of trial counsel claim does not have merit, as set forth above.

It was thus not unreasonable for the state court to find that appellate counsel was not constitutionally deficient—the arguments that Petitioner wishes appellate counsel would have made would not have succeeded. *See supra* at III(b). The petition is thus denied as to this claim.

## IV.  Conclusion

In order to obtain a certificate of appealability, Petitioner must make "a substantial showing of the denial of a constitutional right." *See* 28 U.S.C. § 2253(c)(2). Under this standard, a petitioner must demonstrate that "reasonable jurists could debate whether (or, for that matter, agree that) the petition should have been resolved in a different manner or that the issues presented were 'adequate to deserve encouragement to proceed further.'" *Slack v. McDaniel,* 529 U.S. 473, 483 (2000) (quoting *Barefoot v. Estelle,* 463 U.S. 880, 893 n.4 (1983)). This determination "requires an overview of the claims in the habeas petition and a general assessment of their merit," but "does not require a showing that the appeal will succeed." *Miller-El v. Cockrell,* 537 U.S. 322, 337 (2003). Petitioner fails to make a such a showing. Reasonable

jurists would not find the Court's assessment of Petitioner's claims debatable or wrong.  The state court was not unreasonable in finding that a substitution of counsel did not occur, Petitioner's ineffective assistance of trial counsel claim was procedurally defaulted and in any case does not have merit, the state court was not unreasonable in finding that Petitioner's conviction of unlawful imprisonment was supported by sufficient evidence, Petitioner's cumulative error claim is not cognizable on habeas review in this Court, and the state court was not unreasonable in finding that Petitioner was not deprived his right to effective assistance of appellate counsel.   A certificate of appealability is denied.

The Court also denies Petitioner leave to proceed *in forma pauperis* on appeal, because an appeal would not be taken in good faith. *See* 28 U.S.C. § 1915(a)(3);   *Foster v. Ludwick*, 208 F. Supp. 2d 750, 764 (E.D. Mich. 2002) ("The standard for issuing a certificate of appealability has a higher threshold than the standard for granting *in forma pauperis* status, which requires showing that the appeal is not frivolous.") (citing *United States v. Youngblood,* 116 F.3d 1113, 1115 (5th Cir. 1997)).   "'Good faith' merely requires showing that the issues are

arguable on the merits; it does not require a showing of probable success." *Id.* at 765. Because Petitioner's claims are not arguable on the merits, an appeal could not be taken in good faith. Thus Petitioner may not proceed *in forma pauperis* if he wishes to appeal this decision. *Id.*

## V.   Conclusion

For the foregoing reasons, the petition for a writ of habeas corpus, (Dkt. 1; Dkt. 2), a certificate of appealability, and leave to proceed *in forma pauperis* are denied. And in light of the foregoing, the Court denies as moot Petitioner's Motion for Partial Summary Judgment. (*See* Dkt. 17.)

IT IS SO ORDERED.

Dated: October 19, 2015            s/Judith E. Levy
Ann Arbor, Michigan                JUDITH E. LEVY
                                   United States District Judge


## CERTIFICATE OF SERVICE

The undersigned certifies that the foregoing document was served upon counsel of record and any unrepresented parties via the Court's ECF System to their respective email or First Class U.S. mail addresses disclosed on the Notice of Electronic Filing on October 19, 2015.

s/Felicia M. Moses
FELICIA M. MOSES
Case Manager